IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITES STATES OF AMERICA, | 3:10-CV-01367-BR |
| Plaintiff, | |
| v. | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT |
| 911 MANAGEMENT, LLC, and DANIEL DENT, | |
| Defendants. | |

S. AMANDA MARSHALL
United States Attorney
1000 S.W. Third Avenue
Suite 600
Portland, OR 97204
(503) 727-1000

LAUREN MARIE CASTALDI
QUINN P. HARRINGTON
U.S. Department of Justice, Tax Division
Civil Trial Section, Western Region
P.O. Box 683
Washington, DC 20044
(202) 514-9668
(202) 514-6507

      Attorneys for Plaintiff

1 -   FINDINGS OF FACT AND CONCLUSIONS OF LAW

**GARY K. KAHN**
**J. MICHAEL HARRIS**
**MARTIN W. REEVES**
Reeves Kahn, Hennessy & Elkins
4035 S.E. 52nd Ave.
P.O. Box 86100
Portland, OR 97286-0100
(503) 777-5473

Attorneys for Defendants

**BROWN, Judge.**

This matter comes before the Court to resolve the single remaining issue: whether Defendant Daniel Dent is personally liable for a 50% penalty pursuant to 26 U.S.C. § 6332(d)(2) for his failure to honor certain tax levies issued by the United States Internal Revenue Service (IRS) without having reasonable cause to do so. This question turns primarily on fact issues as to why Dent did not honor these levies. The matter was tried to the Court on November 26, 2013.

Having weighed and evaluated all of the evidence in the same manner that it would instruct a jury to do and having fully considered the legal arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52(a). For the reasons that follow, the Court finds in favor of Dent on the 50% penalty issue.

2 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

**BACKGROUND**

When it commenced this action, the United States of America sued Defendants Dent and 911 Management, LLC, alleging Defendants violated 26 U.S.C. § 6332(d)(1) for failing to comply with IRS levies to collect the liabilities of Thomas Weathers and Kathy Weathers for unpaid federal income taxes for tax years 1996 and 1998 through 2006. The United States sought judgment against both Defendants for (a) the balance of the unpaid tax liabilities for which the levies were issued plus any statutory accruals and interest thereon and (b) a 50% penalty for failure to honor a levies without reasonable cause under 26 U.S.C. § 6332(d)(2).

On January 10, 2012, the Court entered Default Judgment (#64) against 911 Management in the amount of $129,205.48 for its failure to honor the IRS levies plus any statutory accruals and interest from December 31, 2011, and the additional amount of $64,602.74 for the 50% penalty plus any statutory accruals and interest. On June 27, 2013, the Court also issued an Order (#87) granting the United States' Motion (#46) for Summary Judgment against Dent with respect to Dent's failure to comply with the IRS levies in the first instance. As a result of that ruling, the Court has already determined Dent is personally liable for the same $129,205.48 plus any statutory accruals and interest from December 31, 2011, that are the subject of the Default Judgment against 911 Management.

3 -   FINDINGS OF FACT AND CONCLUSIONS OF LAW

Thus, the only issue for trial was whether Dent is also personally liable for an additional 50% penalty under 26 U.S.C. § 6322(d)(2) for his failure to comply with the levies without "reasonable cause." As noted, this is primarily a question of fact as to why Dent did not honor the levies.

According to the United States, there was not any bona fide dispute over the amount of the Weathers's property that was under Dent's control and that was to be surrendered pursuant to the levies or as to the legal effectiveness of the levies. Accordingly, the United States contends there was not any reasonable cause for Dent to fail to honor the levies.

Dent disagrees and asserts he is not liable for the 50% penalty. In particular, Dent asserts the language of the levies was ambiguous, confusing, and contained contradictory instructions, and, therefore, there was a bona fide dispute over the legal effectiveness of the levies and over the property to be surrendered. Dent also contends he relied on the advice of attorney Marc K. Sellers, counsel for 911 Management, over the contrary instructions of IRS Revenue Officer Tonni Carpenter,[1] and, as a result, he had reasonable cause not to comply with the

---

[1] "Tonni Carpenter" is a pseudonym and not the true name of the revenue officer who represented the IRS in this matter. Carpenter uses this pseudonym to protect her personal safety pursuant to Public Law 105-206, Title III, Subtitle H, § 3706, 112 Stat. 685, 788 (1998), and the regulations set forth in the IRS Manual, § 1.2.4, et seq. (2000).

4 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

levies.

## FINDINGS OF FACT

On November 26, 2013, the Court conducted a one-day bench trial upon the parties' agreement. Three witnesses testified: Dent; Revenue Officer Tonni Carpenter; and Marc K. Sellers, Attorney for 911 Management. Pursuant to Federal Rule of Civil Procedure 52(a), the Court finds the following facts by a preponderance of the evidence:

**I.   Stipulated Facts.**

The parties stipulated to the following facts in their Pretrial Order (#131), and, therefore, the Court finds these facts as true:

A.   Dent was the initial and only manager of 911 Management until it dissolved in 2010.

B.   As the manager of 911 Management, Dent was the only person authorized to conduct business on behalf of 911 Management, and he had the sole authority to make payments on behalf of 911 Management.

C.   911 Management ceased doing business on April 30, 2010.

D.   Kathy Weathers was a member of 911 Management and was allocated a 35% distribution of profits. As of 2006, 911 Management had a fixed and determinable obligation to pay at least $5,000 per month to Kathy Weathers.

5 -   FINDINGS OF FACT AND CONCLUSIONS OF LAW

E.  In 2006 Kathy Weathers's fixed and determinable payments were increased to $5,700 per month. Kathy Weathers received $5,700 every month from 911 Management.

F.  Dent, as manager of 911 Management, paid the $5,700 to Kathy Weathers every month on or about the first of the month.

G.  As recorded on 911 Management's Register Report from February 1, 2008, to December 31, 2008, Dent made the guaranteed monthly membership distributions to Kathy Weathers on or about the first of every month until 911 Management ceased operation.

H.  In 2007 two license agreements were created which specified that 911 Management would operate and receive the income of two hotels leased by the Weatherses, and in exchange they were to receive a license fee equal to 3% of the monthly gross proceeds generated from the operation of the hotels.

I.  Before the Notice of Levy was served on February 20, 2008, Dent had made 911 Management's guaranteed monthly $5,700 membership distribution to Kathy Weathers for February on February 1, 2008.

J.  On February 20, 2008, the IRS served a Notice of Levy on 911 Management and Dent to collect Thomas and Kathy Weathers's outstanding federal tax liability of $38,897.49 for the 1996 tax year.

K.  On February 20, 2008, the IRS served a Notice of Levy on 911 Management and Dent to collect Kathy Weathers's

6 -   FINDINGS OF FACT AND CONCLUSIONS OF LAW

outstanding federal tax liability of $63,702.45 for the 1998, 1999, 2000, 2001, 2002, 2003, 2004, 2005, and 2006 tax years.

L. Shortly after the levies were served, Tonni Carpenter, a Revenue Officer with the Internal Revenue Service, informed Dent that the levies attached to both the $5,700 monthly distribution to Kathy Weathers and to the 3% of gross proceeds paid to the Weatherses.

M. The levy forms contained instructions and excerpts of various statutes.

N. After receiving the levies, Dent exchanged multiple emails with the Weathers's purported business advisor, Jeff Townley, and 911 Management's attorney, Marc K. Sellers, discussing the levies.

O. On March 18, 2008, Dent sent to the IRS his response to the levies in which he stated: "I understand that all monies owed for taxes, interest, penalties and additions owed by the Weathers have been satisfied. Had that not been the case, my attorney advised me to notify you that 911 Management does not pay wages or salary to the Weathers."

P. After receiving [Dent's] response to the levies, Tonni Carpenter spoke with Dent and told him that the levies attached to all money paid to the Weatherses and that he needed to comply with the levies.

Q. On March 25, 2008, Tonni Carpenter sent a letter to

7 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

Dent informing him that "until 911 Management LLC received a Form 668-D, Release of Levy, from the Internal Revenue Service, the monies that are being distributed to Thomas and/or Kathy Weathers are attached and those monies are required to be submitted to the Internal Revenue Service."

R.  After the Notice of Levy was served, Dent continued to make the $5,700 monthly distribution to Kathy Weathers by making the March distribution on March 1, 2008.

S.  On April 1, 2008, the IRS served a final demand upon 911 Management for payment regarding the notice of levy based upon Kathy Weathers's outstanding federal tax liability for the 1998, 1999, 2000, 2001, 2002, 2003, 2004, 2005, and 2006 tax years.

T.  On April 1, 2008, the IRS served Dent with a final demand for payment upon 911 Management regarding the notice of levy based upon Thomas and Kathy Weathers's outstanding federal tax liability for the 1996 tax year.

U.  After receiving the two Final Demand for Payment Forms from the IRS, on April 1, 2008, Dent continued to exchange correspondence with Townley and Sellers concerning the levies during which Dent acknowledged he knew he could be personally liable for any property not surrendered plus an additional 50% penalty.

V.  As manager of 911 Management, Dent continued to make

8 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

the guaranteed $5,700 monthly distribution to Kathy Weathers on or about the first of every month after the Notice of Levy was served on February 20, 2008, until the last monthly distribution was made on April 1, 2010.  Dent made $148,200.00 in monthly distributions to Kathy Weathers after receipt of the levies.

W.   As Manager of 911 Management, Dent continued to pay the Weatherses their 3% licensor fee through payments toward Kathy Weathers's personal expenses after the Notice of Levy was served until the last payment was made on July 14, 2010.  Dent made payments on behalf of Kathy Weathers and Thomas Weathers in the amount of $70,571.71 after the Notice of Levy was served.

**II.   Facts the Court Finds Established in the Record or at Trial.**

The Court finds the following facts were established by a preponderance of the evidence at trial or were otherwise established in the record of this case.

A.   "On June 28, 2005, Tom and Kathy Weathers were convicted . . . [of] one count of evasion of payment of tax for tax year 1996, and five counts of failure to file tax returns for the years 1998 through 2002. . . .  On September 29, 2005, Kathy Weathers was sentenced to two years of probation. . . .  On October 14, 2005, Tom Weathers was sentenced to sixty months in prison for the tax convictions." *911 Management, LLC v. United States,* 57 F. Supp. 2d 1186, 1188 (D. Or. 2009).  911 Management was formed in October 2005.  *Id.*

9 -   FINDINGS OF FACT AND CONCLUSIONS OF LAW

B.  Based on this Court's evaluation of the evidence at trial and the record as a whole, the Court finds 911 Management was formed, at least in part, to attempt to provide Kathy Weathers with an income stream while Thomas Weathers was incarcerated.

C.  In 2007 the United States issued levies against the bank accounts of 911 Management to satisfy some of the outstanding tax liabilities of Thomas and Kathy Weathers.  *911 Management,* 57 F. Supp. 2d at 1188.  These 2007 levies are not at issue in this case, but litigation involving them was ongoing during the time relevant to this case.

D.  On January 9, 2008, Sellers, as attorney for 911 Management, filed an action in this Court against the United States for wrongful levy and for "Unlawful Nominee Levies."  (#1, 3:08-cv-00047-HU, which is the same case reported as *911 Management v. United States, id.*).

E.  As the parties stipulated, on February 20, 2008, the United States issued the disputed levies in this case (the 2008 levies).  When Dent received the 2008 levies, he knew 911 Management had already made its February 2008 payments to Kathy Weathers, and, therefore, he also knew 911 Management did not have any immediate obligation to pay funds to her.  Dent also knew 911 Management was due to make its monthly $5700 payment and any 3% payment to Kathy Weathers on or about the first of March

10-  FINDINGS OF FACT AND CONCLUSIONS OF LAW

2008. Finally, Dent knew he could be held personally liable for the amount due under the 2008 levies and for a 50% penalty if he did not have reasonable cause to refuse to honor the levies.

F. As the parties stipulated, before and after receiving the 2008 levies Dent exchanged multiple emails and had telephone and other communications as noted herein with Sellers and with Jeff Townley, a purported business advisor for Thomas and Kathy Weathers and 911 Management. In these communications both the 2007 and 2008 levies were discussed.

G. Before the 2008 levies were issued Townley proposed to both Sellers and Dent the posting of a "bond," which Townley, who is an attorney, claimed would satisfy all of the tax liabilities of the Weatherses and, in particular, would resolve he 2007 levies so that the bank funds the 2007 levies attached would be released. After the 2008 levies were issued, however, Sellers told Dent at some point in late February or early March 2008 that he was not familiar with such a "bond." Moreover, Sellers never gave Dent any legal opinion that Townley's "bond" proposal was a valid mechanism to resolve the levy issues or to avoid honoring the 2008 levies.

H. On February 21, 2008, after the 2008 levies were issued, Dent sent copies of the levies to Sellers with a request for advice as to how to respond to the 2008 levies. Sellers and Dent discussed the issues by telephone on February 25, 2008.

11- FINDINGS OF FACT AND CONCLUSIONS OF LAW

Among other things, they discussed whether the March payments due to Kathy Weathers on or about March 1 were subject to the 2008 levies and, in particular, whether those payments came within the literal terms of the 2008 levies on the theory that the payments were not for "wages and salaries." Dent believed 911 Management would not likely get such funds back from the IRS if he paid them pursuant to the 2008 levies.

   I.    As the parties stipulated, Dent paid 911 Management's $5700 monthly payment to Kathy Weathers on March 1, 2008, and did not then nor at any time thereafter honor the 2008 levies.

   J.    In early March 2008 Sellers spoke with another local tax attorney, Jeffrey M. Wong, about the form and wording of the 2008 levies as Sellers continued to evaluate whether 911 Management's ongoing obligations to Kathy Weathers came within the terms of the 2008 levies. Sellers received a voicemail from Wong on March 5, 2008, in which Wong suggested a Form 668W levy (the type the IRS used for the 2008 levies) typically was reserved for wages, salary, and other continuing payments and in which he also suggested, in effect, that the IRS had used the wrong form of levy for the 2008 levies issued to 911 Management because Kathy Weathers was not "employed" by 911 Management.[2]

---

[2] The Court received evidence about Wong's voice message over Plaintiff's hearsay objection not for its truth but because the content of the message had some effect on the advice that Sellers gave to Dent.

12-   FINDINGS OF FACT AND CONCLUSIONS OF LAW

K.  On March 7, 2008, Sellers spoke with Dent by telephone about the form of the 2008 levies, and Sellers followed up that conversation with a letter dated March 11, 2008, in which Sellers advised Dent to "report [to the IRS] that 911 Management does not pay wages or salary to [the Weatherses]."

L.  As stipulated by the parties, Revenue Officer Tonni Carpenter repeatedly told Dent on several occasions from late February until late March 2008 that the 2008 levies attached to 911 Management's monthly obligation to pay $5700 to Kathy Weathers plus any 3% license payments.

M.  Some time before March 18, 2008, Townley informed Dent that he had provided the IRS with a "bond" that satisfied all of the Weathers's outstanding tax liabilities, including the 2007 levies and the 2008 levies.  As stipulated by the parties, on March 18, 2008, Dent formally responded to the IRS regarding the 2008 levies by stating:  "I understand that all monies owed for taxes, interest, penalties and additions owed by the Weathers have been satisfied.  Had that not been the case, my attorney advised me to notify you that 911 Management does not pay wages or salary to the Weathers."  The Court finds in this message that Dent was, in fact, asserting two bases not to honor the 2008 levies:  first, that Townley's purported "bond" had satisfied the 2008 levies and, second, that because 911 Management's attorney advised Dent to "notify [the IRS] that 911 Management does not

13-   FINDINGS OF FACT AND CONCLUSIONS OF LAW

pay wages or salary to the Weathers," Sellers had implicitly concluded - and Dent implicitly concurred - the 2008 levies only attached to wages or salary of the Weatherses (none of which Dent believed 911 Management owed to either of them).

N.   Although Dent never relied on any statute, case, or other recognized authority to support a contention that he was not required to surrender property in response to the 2008 levies, Dent did rely, at least in part, on Sellers's direction to "report [to the IRS] that 911 Management does not pay wages or salary to [the Weatherses]."

O.   Although Tonni Carpenter specifically rejected Dent's response to the levies and Dent did not receive additional advice from Sellers after that rejection, these exchanges were occurring in the midst of the still-pending litigation that Sellers was prosecuting against the United States over the 2007 levies, and, under all of the circumstances, it was reasonable at the time for Dent not to accept Carpenter's opinion over the apparently contrary advice of 911 Management's counsel.

P.   The Court notes Dent did not raise the issue of his reliance on Sellers's advice until nearly a year after the United States filed this action and, in fact, on the very same day that Defendants commenced a claim through the Oregon Professional Liability Fund to pay for their outstanding legal fees in this matter. Indeed, Plaintiff contends Dent manufactured the "advice

14-   FINDINGS OF FACT AND CONCLUSIONS OF LAW

of counsel" argument only after the Court ruled against Dent on certain summary-judgment issues. Nevertheless, the fact that Sellers gave Dent written advice on March 11, 2008, to "report [to the IRS] that 911 Management does not pay wages or salary to [the Weatherses]" undermines this contention. After weighing and evaluating all of the evidence, the Court finds when Dent decided in March 2008 not to honor the 2008 levies, he relied in part on Seller's advice that, in effect, 911 Management did not owe "wages and salary" to either of the Weatherses (in addition to relying on Townley's sham "bond" assertion).

## CONCLUSIONS OF LAW

Based on the foregoing Findings of Fact and the legal standards that follow, the Court makes the following Conclusions of Law pursuant to Rule 52(a)(1):

A.  Pursuant to 26 U.S.C. § 6332(d)(2), Dent is subject to a penalty equal to 50% of the amount of property recoverable under the 2008 levies for failing to surrender property or rights to property unless Dent establishes he had reasonable cause for failing to honor the levies. *See United States v. Donahue Indus., Inc.*, 905 F.2d 1325, 1331 (9th Cir. 1990)("A court must impose a 50% penalty on any person who fails or refuses to honor a tax levy without 'reasonable cause.'").

15- FINDINGS OF FACT AND CONCLUSIONS OF LAW

B.  To establish reasonable cause in order to avoid the 50% penalty, Dent must show there was a "'bona fide dispute . . . concerning the amount of the property to be surrendered pursuant to a levy or concerning the legal effectiveness of the levy.'" *Donahue*, 905 F.2d at 1331 (quoting Treas. Reg. § 301.6332-1(b)(2)).  "[S]erious deficiencies in the levy notices may call into question the legal effectiveness of the levy, and give reasonable cause for failing to honor the levy." *Donahue*, 905 F.2d at 1332.

C.  To the extent that Dent asserts he relied on Townley's purported $10,000,000 "bond" to satisfy the federal tax liabilities at issue, such reliance was unreasonable.  There was not any basis for Dent to believe that Townley could produce a $10,000,000 "bond" without, at the least, 911 Management producing equivalent assets; there is not any evidence that Dent produced such assets to Townley to acquire such a bond; and, in any event, Dent did not see any form of such a bond before it was purportedly produced to the IRS.  Thus, Dent failed to establish that Townley's alleged posting of a "bond" gave Dent reasonable cause not to honor the 2008 levies.

D.  Nevertheless, the Court agrees with Magistrate Judge Papak's previous analysis that led him to conclude as a matter of

16- FINDINGS OF FACT AND CONCLUSIONS OF LAW

law that the instructions[3] for the 2008 levies created an objective ambiguity about the effect of the 2008 levies. Findings and Recommendation (F&R)(#109) at 11, n.4. The Court also agrees with Judge Papak's legal conclusion that the instructions created an impression that the 2008 levies attached only to funds owed at the time of the levies and failed to reach ongoing monthly payments. *Id.* at 11 (citing F&R (#70) at 15-16).[4]

 E. Under these circumstances (including the ongoing litigation over the 2007 levies, the confusing language in the 2008 levies and levy notices, and Sellers's subjective concern that the IRS may have used the wrong levy form for the 2008 levies), it was objectively reasonable for Dent to rely on Sellers's advice to "report [to the IRS] that 911 Management does not pay wages or salary to [the Weatherses]" over Tonni Carpenter's contemporaneous but contrary instructions.

 F. Accordingly, Dent has established there was a "bona

---

[3] Judge Papak noted that with respect to other income, the instructions indicated the levies attached only to "funds you owe the taxpayer now" and that language was capable of confusing any layperson about the extent the levies attached to recurrent monthly obligations.

[4] Although this Court did not adopt F&R (#109) because the Court concluded there were genuine disputes of material fact as to the factual bases for Dent's refusal to honor the 2008 levies, the Court, nevertheless, agrees with Judge Papak's legal conclusion that there were "serious deficiencies" created by the language of the 2008 levies and levy notices.

17- FINDINGS OF FACT AND CONCLUSIONS OF LAW

fide" legal dispute over the effectiveness of the 2008 levies on which he relied when he decided to refuse to honor the levies. As a result, Dent has also established he had reasonable cause not to honor the 2008 levies at the time, and, therefore, Dent is not liable for the 50% penalty.

## CONCLUSION

For these reasons, the Court enters its **VERDICT** in favor of Dent on the 50% penalty issue.

The Court directs counsel for the United States (1) to confer with counsel for Dent concerning an appropriate form of Judgment to conclude this action and (2) to submit a proposed form of Judgment for the Court's consideration no later than January 13, 2014. To the extent that Dent has any objections to that form of Judgment, such objections are due no later than January 20, 2013.

IT IS SO ORDERED.

DATED this 2nd day of January, 2014.

_____
ANNA J. BROWN
United States District Judge

18- FINDINGS OF FACT AND CONCLUSIONS OF LAW